## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| EVAN KLANE by his guardian<br>DEBORAH KLANE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil no. 1:12-cv-00203-NT |
| v. | ) | |
| | ) | |
| MARY MAYHEW, Commissioner of<br>Maine Department of Health and<br>Human Services, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STAY

This case comes before the Court on the Defendant's motion to dismiss (ECF No. 11) and the Plaintiff's motion to stay (ECF No. 14). The Court held oral argument on the motions on February 19, 2013. For the reasons that follow, the Defendant's motion to dismiss is **DENIED**, and the Plaintiff's motion to stay is **GRANTED**.

## BACKGROUND[1]

Evan Klane is a 21-year old MaineCare recipient with significant disabilities who currently lives at home. He requires constant supervision, but he has been able to live at home because MaineCare has provided him with Level V home nursing care through its Private Duty Nursing (PDN) program, which includes round-the-

---

[1] The parties do not dispute the Court's ability to consider the Administrative Hearing Recommendation, Final Decision, Petition for Review of Final Agency Action Pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11001 *et seq.,* and First Amended Petition for Review of Final Agency Action Pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11001 *et seq.*, which are attached as exhibits to the Defendant's motion. *See Kilroy v. Mayhew*, 841 F. Supp. 2d 414, 416-17 (D. Me. 2012).

clock nursing care.[2] In August of 2011, the Maine Department of Health and Human Services determined that Klane was no longer eligible for Level V PDN services but was instead entitled to 28 hours per week of Home and Community Benefits for the Elderly and for Adults with Disabilities services.

Klane filed a timely administrative appeal of the denial of services, and an administrative hearing was held in March of 2012. The hearing officer recommended that the Commissioner affirm the denial of Klane's Level V PDN services, concluding that Klane's condition was not "unstable" under the MaineCare regulations. The Commissioner issued a final administrative decision adopting the recommended decision on May 30, 2012.

Klane filed a petition for review of this decision pursuant to Maine Rule of Civil Procedure 80C and 5 M.R.S. § 11007(4)(C), claiming that the hearing officer erred as a matter of law when he reached the conclusion that Klane did not meet the eligibility requirements for PDN Level V services. Specifically, Klane claimed:

> The Recommended Decision is based on clear legal error. The hearing officer erroneously interpreted MaineCare's eligibility requirements for PDN Level V services, adopting a reading that is contrary to the plain language of the regulation, leads to an absurd result, is inconsistent with the purpose of Section 96 and impermissibly shifted the burden of persuasion from the Department to Evan Klane. In upholding the decision, the Final Administrative Decision is based on the same clear legal errors.

Def.'s Mot. to Dismiss and Inc. Mem. of Law Ex. 3 ¶¶ 18-19 (ECF No. 11-3).

---

[2] Klane has cerebral palsy with spastic quadriplegia, intractable seizure disorder, hypoxemia, congenital microcephaly, recurring pneumonia, anaphylaxis, acute bronchitis, pulmonary edema, gastrointestinal bleeding, tachycardia and bradycardia. He has a tracheostomy tube that allows him to breathe, and he receives nutrition, hydration, and medication through a gastrostomy tube. Klane's tracheostomy tube and gastrostomy tube both need to be monitored, and Klane's tracheostomy tube requires regular suctioning. Klane requires constant supervision. First Am. Verified Compl. ¶¶ 6-8 (ECF No. 6).

The focus of Klane's petition for review boils down to whether his tracheostomy and gastrostomy tubes are used for an unstable condition. The case has been fully briefed and argued before the Maine Superior Court, and the parties are awaiting a decision. An appeal to the Maine Law Court is available to either party. 5 M.R.S. § 11008(1).

On June 27, 2012, the Plaintiff filed a two-count complaint in this Court alleging violations of Title II of the Americans with Disabilities Act (ADA) § 202, 42 U.S.C. § 12132, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and seeking declaratory and injunctive relief. The focus of the complaint is whether Klane's imminent risk of institutionalization violates Title II of the ADA and its implementing regulations, particularly the integration mandate,[3] and whether the Commissioner's actions constitute unlawful discrimination in violation of section 504 of the Rehabilitation Act.

## DISCUSSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Defendant asks the Court to dismiss this case under either *Burford* abstention, *Colorado River* abstention, or the common law rule against claim splitting. The Plaintiff requests, as an alternative to dismissing the case, that the Court stay the case pending resolution of Klane's petition to the Superior Court.[4]

---

[3]     In *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581, 607 (1999), the Supreme Court held that Title II of the ADA and its regulations require that the state provide community-based placement for disabled individuals when a state treatment professional has determined that community-based placement is appropriate and community-based placement can be reasonably accommodated, taking into account the state's resources and the needs of others with disabilities in the state.

[4]     Although the Commissioner opposes the Plaintiff's motion to stay, counsel for the Commissioner conceded at oral argument that if the Court denies its motion to dismiss, the

## A. *Burford* Abstention

"As the First Circuit has repeatedly emphasized, 'federal courts have a virtually unflagging obligation to exercise the jurisdiction given them.'" *Kilroy*, 841 F. Supp. 2d at 419 (citing *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011)). However, under the Supreme Court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "[a] federal court, by abstaining, may avoid the awkward circumstance of turning the federal court into a forum that will effectively decide a host of detailed state regulatory matters, to the point where the presence of the federal court, as a regulatory decision-making center, makes it significantly more difficult for the state to operate its regulatory system." *Bath Mem'l Hosp. v. Me. Health Care Fin. Comm'n*, 853 F.2d 1007, 1012 (1st Cir. 1988). The Court considers three factors in determining whether *Burford* abstention is appropriate:

> (1) [t]he availability of timely and adequate state-court review, (2) the potential that federal court jurisdiction over the suit will interfere with state administrative policymaking, and (3) whether conflict with state proceedings can be avoided by careful management of the federal case.

*Chico Serv. Station,* 633 F.3d at 32.

The First Circuit has adopted a narrow reading of the *Burford* abstention doctrine, noting "the Supreme Court's repeated admonitions that *Burford* abstention be 'the exception, not the rule.'" *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 473 (1st Cir. 2009) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)). The First Circuit has explained that:

---

Commissioner is not opposed to staying this case pending resolution of the Plaintiff's appeal in state court.

*Burford* abstention must only apply in "unusual circumstances," when federal review risks having the district court become the "regulatory decision-making center." Thus, when a federal court's interference would effectively create a dual review structure for adjudicating a state's specific regulatory actions, abstention under *Burford* may be appropriate. We observed in *Public Service Co. of New Hampshire v. Patch*, 167 F.3d 15 (1st Cir. 1998), that "[t]he fundamental concern in *Burford* [was] to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Abstention is not warranted, however, when a claim requires the federal court to decide "predominating federal issues that do not require resolution of doubtful questions of local law and policy."

*Vaquería Tres Monjitas*, 587 F.3d at 474 (quoting *Bath Mem'l Hosp.*, 587 F.3d at 1012-13 and *Patch*, 167 F.3d at 24).

### 1. Factor One: Availability of Timely and Adequate State-Court Review

There is no reason to think that the state court's review of the Plaintiff's federal claims would be either untimely or inadequate. However, the Court is troubled by the possibility that if the Plaintiff's federal claims were later precluded by his state court suit, he would, by appealing his adverse disability benefits decision, have forfeited his right to bring his federal claims within their six-year statute of limitations.[5] Nonetheless, because timely and adequate state court review is available, this factor is neutral in the Court's abstention analysis.

---

[5]     Neither the ADA nor the Rehabilitation Act provides a statute of limitations for discrimination claims, so the Court applies Maine's six-year statute of limitations for civil actions. On the other hand, 80C petitions have a 30-day statute of limitations *Compare Conners v. Me. Med. Ctr.*, 42 F. Supp. 2d 34, 51 (D. Me. 1999), *with* 5 M.R.S. § 11002(3).

5

### 2. Factor Two: Interference with State Administrative Policymaking

The Defendant argues that because the Plaintiff's claim is individual in nature and not a systemic challenge to the Department's decision-making process, the Court's exercise of jurisdiction over the Plaintiff's claims will create a dual review structure of state administrative actions and interfere with state administrative policymaking. The Plaintiff counters that he is not asking the Court to review the Commissioner's interpretation of MaineCare's regulations, as he does in his 80C petition, but rather he is asserting his rights under the ADA and section 504 of the Rehabilitation Act. The Defendant's argument relies heavily on this Court's decision in *Kilroy*.[6] *Kilroy,* however, is distinguishable.

Unlike the plaintiff in *Kilroy*, who by-passed state administrative review and sought federal injunctive relief against the agency's interpretation of its regulations, the Plaintiff here has petitioned the Superior Court pursuant to Rule 80C for review of the Department's interpretation of its eligibility requirements for PDN Level V services. In his petition, he argues

---

[6]     Kilroy was a disabled, divorced parent of a minor son. Both Kilroy and his son received Social Security Administration (SSA) disability benefits. Because Kilroy was required to pay child support for his son, the SSA paid his son's dependent benefits directly to Kilroy's ex-wife, and the benefits counted towards Kilroy's monthly child support obligation. Kilroy also received food assistance benefits under the federal Supplemental Nutrition Assistance Program (SNAP). The Department, which administers the SNAP program in Maine, counted the sons' dependent benefits as part of Kilroy's household income for purposes of determining Kilroy's SNAP benefits. As a result, Kilroy received fewer food assistance benefits than he otherwise would have. *Kilroy*, 841 F. Supp. 2d at 417. Kilroy pursued an administrative appeal and the Department affirmed its calculation under its interpretation of its regulations. Rather than petition the Superior Court for review of the Department's interpretation pursuant to Maine Rule of Civil Procedure 80C, Kilroy filed suit in this Court seeking: (1) to enjoin the state from treating the dependent benefits paid to Kilroy's ex-wife as income for purposes of Kilroy's food assistance benefits calculation; (2) to enjoin the Department from reducing his food assistance; and (3) to require the state to issue the benefits he would have received but for the inclusion of the dependent benefits in his income calculation. *Id.* at 418.

that he does require nursing care seven days a week for his gastrostomy tube and tracheostomy tube and that the Department's interpretation of "unstable" is erroneous. In his action before this Court, the Plaintiff claims that the imminent risk of his institutionalization violates the anti-discrimination provision of the ADA and the Rehabilitation Act's mandate that services be provided to disabled individuals in the most integrated setting possible.

In his complaint, the Plaintiff does not ask the Court to review the Commissioner's interpretation of its regulations, and he does not ask the Court to order the Department to find him eligible for PDN Level V services or to provide him with PDN Level V services specifically. Instead, the Plaintiff seeks: (1) a declaratory judgment that the Department's reduction of his services constitutes unlawful discrimination; and (2) injunctive relief ordering the Department to continue to provide Klane with community-based services and "individualized coverage of Plaintiff's service needs in the least restrictive, most integrated setting." First Am. Verified Compl. 14.

At this early stage, with no briefing on the merits of the Plaintiff's case and only the complaint and the administrative decisions in the record, the Court is unable to determine whether its adjudication of this case will require it to effectively — and improvidently — decide state regulatory matters. The Court appreciates the state's interest in coherent administration of disability benefits, but concludes that the record and briefing on the Plaintiff's claims

are insufficient for it to decide that this factor weighs in favor of abstention. The abstention analysis will depend on how the Plaintiff develops his case.[7]

### 3.  Factor Three: Conflict with State Proceeding

The Plaintiff has moved for a stay in this case pending resolution of his appeal of his adverse administrative decision in state court. This would permit the state court to resolve any issues of regulatory interpretation before this Court takes up its consideration of the state's compliance with the ADA, the Rehabilitation Act, and *Olmstead*.

Because at this stage it appears that this case involves uniquely federal issues that are broader than the narrow regulatory issue being considered by the State court, and because the Court can, by granting a prudential stay, allow the state to resolve the regulatory questions, the Court denies the Defendant's motion to dismiss the case under *Burford*.

### B.  *Colorado River* Abstention

The *Colorado River* stay doctrine is another narrow exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River*, 424 U.S. at 817. The First Circuit explained that in *Colorado River*:

> The Court emphasized that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention" and should be "exceptional" to justify deferral to the state court.

---

[7]      Counsel for the Commissioner indicated at oral argument that he intends to raise a preclusion argument if the Commissioner wins in state court. The preclusion argument will also depend on how the Plaintiff's claims develop in federal court.

*Currie v. Group Ins. Comm'n*, 290 F.3d 1, 9-10 (1st Cir. 2002) (quoting *Colo. River,* 424 U.S. at 818).

The Court considers six factors to determine when *Colorado River* deference is appropriate, although these factors are neither determinative nor exhaustive:

> (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties.

*Currie*, 290 F.3d at 11 (quoting *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991)). The Court's analysis of these factors must be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 16.

The first two *Colorado River* factors are easily dispensed with because there is no res and the state and federal forums are equally convenient. On the third factor, the Defendant argues that allowing both cases to continue creates piecemeal litigation.   The Defendant argues that Congress, by requiring state Medicaid agencies to provide a hearing process, suggested "a preference for consolidation of challenges to individual benefits decisions within the state administrative and judicial process." Def.'s Mot. to Dismiss and Inc. Mem. of Law 15. This is at least balanced, however, by the fact that the Plaintiff's challenges are brought under federal anti-discrimination statutes, which evidence clear Congressional intent to allow disabled individuals to bring suit in federal court. *See* 42 U.S.C. §§ 12132-33; 29 U.S.C. § 794. Furthermore:

> In considering whether the concern for avoiding piecemeal litigation weighs against the exercise of jurisdiction, "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some *exceptional basis* for requiring the case to proceed entirely in the [state] court." Only where piecemeal adjudication gives rise to harsh, contradictory, unfair consequences, is piecemeal adjudication "exceptional" . . . .

*Huffmire v. Town of Boothbay*, 35 F. Supp. 2d 122, 128 (D. Me. 1999) (quoting *Burns,* 931 F.2d at 146). In this case, the Court does not find the "exceptional" circumstances that the doctrine contemplates.

As to the fourth factor, although the state court obtained jurisdiction first, and there is already a fully developed administrative record before the Superior Court, the Plaintiff's federal law claims will require their own development. Therefore, any efficiency to be gained through having the Plaintiff litigate his federal claims in state court does not seem considerable.

On the fifth factor – whether the federal claims are intertwined with the state claims – the Defendant relies on *Currie*. In *Currie*, the plaintiff brought one suit in federal district court challenging the disability benefits provision of an insurance policy under the ADA and a separate suit in state court challenging the same policy under state law. The district court granted summary judgment for the defendant, but the First Circuit stayed the plaintiff's federal appeal under the *Colorado River* doctrine. The First Circuit decided abstention was appropriate because in order to decide whether the insurance policy fell within the safe harbor provision of the ADA, the federal court had to decide whether the policy violated state law, a question that was pending in state court. *Id.* at 10-11. *Currie* is

distinguishable because in this case the Plaintiff's federal claims, while related to the regulatory claim, are not dependent on that claim.

Finally, the fact that the Plaintiff's interests will be adequately protected in state court if he brings his federal law claims in that forum does not speak in favor of abstention but merely poses no impediment to it. Weighing all the factors, the Court concludes that a stay under *Colorado River* is inappropriate.

## C. **Claim Splitting**

The Defendant's final argument is that the Plaintiff is impermissibly splitting his claims in violation of the common law bar against claim splitting. The test for claim splitting is "whether the first suit, assuming it were final, would preclude the second suit." *Katz v. Gerardi,* 655 F.3d 1212, 1218 (10th Cir. 2011). The cases cited by the Defendant are not persuasive because they involve claims that were split within the same court.[8] The Court concludes that claim splitting is inapplicable here. However, the Plaintiff should be aware that his choice to bring his federal claims separate from his 80C petition may have the unintended consequence that the Plaintiff's federal claims are precluded by a final judgment in

---

[8]     *See Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849 (1st Cir. 1947) (affirming dismissal of plaintiff's second, third, and fourth suits against the same defendant in the same court, each asserting the same claim but for different periods of time); *Geary v. Stanley*, 931 A.2d 1064, 1067 (Me. 2007) (affirming dismissal of plaintiff's second suit in same court based on the same transaction but against a new defendant where second suit was an attempt to circumvent first suit's deadline for adding parties); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) (affirming dismissal of plaintiffs' second suit on claim-splitting grounds where plaintiffs brought second suit against same defendants in same court asserting claims that plaintiffs had attempted to add to first suit months after the close of discovery, over a year after deadline for amending the complaint, and after judge forbade further amendments to the complaint); *Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir. 1977) (affirming district court's consolidation of plaintiff's first complaint and second virtually identical complaint against same defendants in same court); *Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 280-83 (D. Kan. 1988) (dismissing plaintiffs' claims in a second action where the same claims were made, and dismissed from, a first action).

state court. *See, e.g. Hoffman v. Sec'y of State of Me.*, 574 F. Supp. 2d 179, 186-87 (D. Me. 2008) (final judgment in state court petition for review of governmental action precluded federal suit bringing constitutional challenges to the same action); *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 186 (D. Me. 2008) (same).

### D. Plaintiff's Motion to Stay

The Plaintiff asks this Court to stay the federal proceeding pending the outcome of the state court's review. If the state court affirms the agency's decision, then the issues pending here would be moot. The Plaintiff would be able to live at home and would not need to pursue his litigation here.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) ("It is apodictic that federal courts possess the inherent power to stay proceedings for prudential reasons.").

The Court agrees that interests of economy and efficiency for the parties and the Court support a stay in this case.

## CONCLUSION

The Defendant's motion to dismiss is **DENIED** and the Plaintiff's motion to stay is **GRANTED**.


SO ORDERED.

Dated this 26th of March, 2013.

/s/ Nancy Torresen
United States District Judge